Dear Mr. Delbrugge:
You have asked for my opinion on substantially the following question:
Is the Flagler County School Board authorized by section 1001.32(2), Florida Statutes, to enter into a contract with the City of Palm Coast for construction of a vehicle maintenance facility and to provide vehicle maintenance to the city if the school district would derive funds from this arrangement to be used for educational purposes?
According to information supplied to this office, the Flagler County School Board is considering a potential joint venture with the City of Palm Coast in which the district would contract to provide vehicle maintenance to the city at a cost to be set by the school board. Expenses associated with the contract would include capital outlay additions of $4,580,000 within the next three years for expansion of the district's existing vehicle maintenance facilities. You advise that the intention is for revenue from this contract to be used to advance educational purposes within the school district. If the contract and services provided are not profitable, the school district would be required to use existing revenues to offset expenditures. The Flagler County School Board has joined in your request for an opinion on this issue.
Section 1001.32(2), Florida Statutes, provides for the management, control, operation, administration, and supervision of district school systems. It states, in part, that:
"In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law."
School boards are clearly afforded a type of "home rule power" by this statute such that a school board may exercise any power for school purposes in the operation, control, and supervision of its schools, unless expressly prohibited from doing so by the State Constitution or general law.[1]
This office has previously stated that with the amendment in 1983 of section 230.03(2), Florida Statutes,[2] district school boards have been granted "home rule" powers and thus, may exercise any power for school purposes in the operation, control and supervision of the free public schools in their districts unless expressly prohibited by the State Constitution or general law. However, this opinion, like those issued subsequently and the court cases construing school board home rule powers, conditions the exercise of this power on its exercise "for school purposes."[3]
The "Florida K-20 Education Code"[4] makes provision for the powers and duties of district school boards. Among these are powers and duties relating to the school plant. Section 1001.42(9), Florida Statutes, provides that the district school board shall:
"Approve plans for locating, planning, constructing, sanitating, insuring, maintaining, protecting, and condemning school property as prescribed in chapter 1013 and as follows:
(a) School building program. — Approve and adopt a districtwide school building program.
(b) Sites, buildings, and equipment. —
1. Select and purchase school sites, playgrounds, and recreational areas located at centers at which schools are to be constructed, of adequate size to meet the needs of projected students to be accommodated.
2. Approve the proposed purchase of any site, playground, or recreational area for which district funds are to be used.
3. Expand existing sites.
* * *
5. Enter into leases or lease-purchase arrangements, in accordance with the requirements and conditions provided in s. 1013.15(2), with private individuals or corporations for the rental of necessary grounds and educational facilities for school purposes or of educational facilities to be erected for school purposes. Current or other funds authorized by law may be used to make payments under a lease-purchase agreement. Notwithstanding any other statutes, if the rental is to be paid from funds received from ad valorem taxation and the agreement is for a period greater than 12 months, an approving referendum must be held. The provisions of such contracts, including building plans, shall be subject to approval by the Department of Education, and no such contract shall be entered into without such approval. As used in the section, "educational facilities' means the buildings and equipment that are built, installed, or established to serve educational purposes and that may lawfully be used. The State Board of Education may adopt such rules as are necessary to implement these provisions.
* * *
7. Make or contract for additions, alterations, and repairs on buildings and other school properties.
8. Ensure that all plans and specifications for buildings provide adequately for the safety and well-being of students, as well as for economy of construction."
The powers and duties of the district school board in relation to the school plant are directed toward serving educational purposes. Nothing in these provisions would lead me to conclude that the school board is authorized to undertake construction of facilities or operation of programs that would serve the interests of other governmental agencies and only incidentally promote educational purposes through fundraising.
I would also note that the statutes currently contain numerous provisions relating to the cooperative development and use of educational buildings and grounds. None of these provisions authorizes a school board to contract with a local government to undertake the provision of services for local governmental agencies or to provide facilities for this purpose. Rather, these uses relate to community relations by authorizing the cooperative use of educational facilities for voting places, assembly, or community use centers.[5]
In sum, it is my opinion that the Flagler County School District is not authorized, pursuant to section 1001.32(2), Florida Statutes, to enter into a contract with the City of Palm Coast for construction of a vehicle maintenance facility to provide vehicle maintenance to the city. While the Flagler County School District possesses a variant of home rule powers which provides it with a broad grant of authority to act for educational purposes, I cannot conclude that the mere receipt of funds as a quid pro quo for services rendered and the deposit of those funds into the school budget would satisfy an educational purpose.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] See Ops. Att'y Gen. Fla. 83-72 (1983), 84-58 (1984), 84-95 (1984), 86-45 (1986), and 00-10 (2000). See also School Board of Collier Countyv. Florida Teaching Profession National Education Association, 559 So. 2d 1197, 1198 (Fla. 2d DCA 1990), generally discussing home- rule powers possessed by school boards.
[2] See s. 7, Ch. 83-324, Laws of Florida, amending s. 230.03(2), Fla. Stat. And see, s. 1001.32(2), Fla. Stat., which is the current codification of s. 230.03(2), Fla. Stat.
[3] See, e.g., School Board of Collier County v. Florida TeachingProfession National Education Association, 559 So. 2d 1197, 1198 (Fla. 2d DCA 1990); Sulcer v. McFatter, 497 So. 2d 1349, 1350 (Fla. 4th DCA 1986) (school board has full governmental authority); Op. Att'y Gen. Fla. 99-04 (1999); 84-58 (1984), 84-95 (1984), 89-87 (1989), and 95-67 (1995).
[4] See s. 1000.01(1), Fla. Stat., providing that Chs. 1000 — 1013, Fla. Stat., shall be known and cited as the "Florida K-20 Education Code."
[5] See s. 1013.10, Fla. Stat. And see ss. 1013.52, 1013.53, 1013.54, Fla. Stat. (cooperative development of educational facilities); s.1013.19, Fla. Stat. (purchase, conveyance, or encumbrance of property interests above surface of land; joint-occupancy structures).